**IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v ) | CASE NO. 2:08-cr-23-04 |
| ) | |
| JEAN VERDINER, ) | |
| ) | |
| Defendant ) | |

**MOTION FOR NEW TRIAL
BASED ON NEWLY DISCOVERED EVIDENCE**

**COMES NOW** the Defendant, Jean Verdiner, by and through his undersigned counsel, and pursuant to Federal Rule of Criminal Procedure 33, and hereby submits this *Motion for New Trial Based on Newly Discovered Evidence*. As grounds for granting this motion, Defendant would show the following:

**Procedural History**

On April 17, 2008, Jean Verdiner and co-defendants Shoubert Beauchamps, Paul Harvey and Linnie Harvey were charged in a three-count Superceding Indictment with offenses involving the distribution of cocaine. In Count 1, each defendant was charged with aiding and abetting one another in the distribution of 500 or more grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2. Counts 2 and 3 charged substantive distribution offenses involving only Linnie Harvey. (Docket Entry # 45)

Prior to trial, co-defendants Linnie Harvey and Paul Harvey agreed to plead guilty and to testify on behalf of the Government. (Docket Entries # 94 and 102) Jean Verdiner and Mr. Beauchamps elected to go to trial. In addition to the Harveys, also testifying at trial was Ronald Saldi, the confidential informant for the Government who had negotiated the drug transaction at issue. On October 17, 2008, following a 3-day jury trial, Jean Verdiner was found guilty. Shoubert Beauchamps was acquitted. (Docket Entry # 108). On February 9, 2009, Mr. Verdiner was sentenced in the middle of the applicable advisory guideline range to 72 months imprisonment followed by 4 years of supervised release. (Docket Entry # 129)[1]

The following month, Vermont State Police Officer and DEA Task Force Agent Jared Hatch obtained a search warrant for the residence of Ronald Saldi, the Government witness who had testified against Mr. Verdiner. (*See* Application for Search Warrant, Case Number 2:09-mj-23). The affidavit attached to the warrant application reveals that law enforcement expected to find evidence that Saldi was continuing to sell marijuana and cocaine from his own residence and from a garage attached to the residence of Saldi's daughter. (*See* Affidavit attached to the above mentioned Application for Search Warrant).

On March 25, 2009, Ronald Saldi was charged in a Criminal Complaint with conspiracy to distribute marijuana and cocaine from March of 2008 through March of 2009 in the District of Vermont. The Affidavit attached to the Complaint was prepared by Drug

---

[1] On March 4, 2009, Paul Harvey was sentenced to 3 years probation which included 4 months home confinement. (Docket Entry # 134) On May 4, 2009, Linnie Harvey was sentenced to 6 months imprisonment and 4 months home confinement. (Docket Entry # 153)

2

Task Force Trooper Todd Baxter, the case agent in Mr. Verdiner's case. (Criminal Complaint, Case Number 2:09-mj-23) The information contained in the affidavits of Baxter and Hatch revealed that Ronald Saldi, while released on bond, was involved in a drug distribution conspiracy at the time he was acting as a Government Informant in the case involving Mr. Verdiner and at the time he testified at trial.

Based upon this newly discovered evidence, Mr. Verdiner now moves for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. The direct appeal of Mr. Verdiner's conviction and sentence is stayed until the resolution of this matter.

### Factual Background[2]

The charges against Mr. Verdiner and his co-defendants resulted from the arrest of an unidentified drug dealer who agreed to cooperate with the Government. Following his arrest in late January 2008, this unnamed person informed case agent, Vermont Drug Task Force Detective Todd Baxter, that his source for cocaine was Ronald ('Chip") Saldi. (TT1-45, 51-52) Armed with this information, and within 24 hours from the CI's arrest, Baxter setup a controlled purchase of 15 ounces of cocaine from Saldi in Williamstown, Vermont. On January 30, 2008, Saldi was arrested and a search of his home resulted in the seizure of cocaine, marijuana, mushrooms, more than $110,000 in cash and 13 firearms. After his

---

[2] The trial transcript of this matter is recorded in 3 bound volumes. Citations to these transcripts will reference the volume of the transcript as TT1, TT2 or TT3 followed by the applicable page number(s).

3

arrest, Saldi, who had previously been convicted of possessing cocaine, agreed to work with Baxter as a confidential informant. (TT1-53-55, 104-105, 116-117)

Although, as Baxter testified, Saldi had been moving a substantial amount of cocaine for a couple of years prior to his arrest (TT1-117), Saldi's efforts to help law enforcement were not immediately successful as the efforts of the snitch that turned on him had been. In fact, Saldi made several attempts to purchase cocaine from other suppliers that simply did not pan out, and law enforcement was not interested in investigating the small purchases of marijuana that Saldi could have arranged. (TT1-54-55, 107-108) The Task Force was hoping that Saldi could identify a source who could supply him with kilos of cocaine and, eventually, he did - Paul Harvey. (TT1-59-60, 109-109)

Paul Harvey and Chip Saldi had been involved with drug transactions in the Barre, Vermont area for years prior to this incident. In fact, Harvey owed Saldi thousands of dollars for cocaine that Saldi had "fronted" to Harvey before Saldi eventually cut him off and stopped dealing with him. (TT1-110-111) On February 22, 2008, Saldi made a monitored phone call to Paul Harvey in which they discussed the purchase of a kilo of cocaine for a price of $32,000. (TT1-60-61; Government's Ex. 60)[3] During the trial, the Government played this recording for the jury and several other recorded conversations involving Saldi and Paul Harvey, which had taken place between February 25 and February 28, 2008, in

---

[3] A transcript of the call reveals that the two did not mention "cocaine" or a "kilo" or make any reference to drugs. However, as Baxter acknowledged, Saldi and Harvey had discussed the purchase of cocaine in previous, unmonitored conversations that Baxter claims he knew about in which Harvey informed Saldi that he could obtain large amounts of cocaine. (TT1- 108-109)

4

which they discuss arrangements pertaining to the transaction. (TT1-66-76, Government's Exhibits, 61, 64, 67, 70, 71, 81 and 83)

That Paul Harvey had arranged for the sale of a kilogram of cocaine to Ron Saldi was undisputed. The issue for the jury was whether Jean Verdiner and Shoubert Beauchamps were the source of the drugs eventually seized. What was clear was that lifelong drug addict Paul Harvey was eager to broker this deal in order to settle his $5000 debt to Saldi. Ironically, Harvey had not been a source of cocaine for Saldi; Harvey had been his customer. For years Harvey had purchased cocaine from Saldi to feed his addiction to the drug. In fact, the day after Saldi was arrested, and for several days thereafter, Harvey called Saldi looking to buy more cocaine. However, Saldi advised Harvey that he could not get any cocaine because he had lost his source of supply. To solve this dilemma, Saldi and Harvey began discussing potential new cocaine sources. (TT1-37-42)

Harvey's search for a new cocaine source eventually led him to a person whose addiction to the drug was even more severe than his own, his sister-in-law, Linnie Harvey. (TT1-42-43) Linnie Harvey had been a drug addict for years and Paul Harvey knew that she could be a source of cocaine. (TT1-43) After several conversations, Linnie informed Paul that she had found a source for a kilo of cocaine at a cost of $35,000. (TT1-47-48)

Linnie Harvey testified that Mr. Verdiner had telephoned her and told her that he could supply a kilo of cocaine. Upon hearing this, Linnie Harvey claimed she handed the phone to Paul Harvey, who had previously met Verdiner, to arrange the details of the sale.

5

(TT1-142-144, 176)  This telephone call was not monitored by law enforcement.  Linnie's involvement, however, did not end once she found the supplier; she was present when the transaction occurred.

As Paul Harvey testified, the transaction was supposed to take place on the evening of February 27, 2008 at the Hilltop Inn in Berlin.  On that night, Paul Harvey went to the hotel room reserved by Linnie Harvey where he found Linnie and two female friends using cocaine.  (TT1-50-52; 62-63)  However, the deal did not take place and, after doing some cocaine himself, Paul Harvey left the hotel that night.  (TT1-63)  He returned to the hotel the next day after Linnie Harvey phoned him and said that they were "good to go."  Paul Harvey then called Saldi and made arrangements for the two to go to the hotel. (TT1-52-53)

Following a monitored call on the morning of February 28, 2008, Baxter arranged for Saldi, who was driving a pickup truck, to pickup Paul Harvey at the Park-n-Ride and to drive him to the Hilltop Inn where Harvey was to provide Saldi with a kilogram of cocaine. (TT1-76-77, 83) According to Baxter, Saldi was not only wired by also kept under surveillance as he picked up Harvey and went to the Hilltop Inn as law enforcement officers monitored the scene from command vehicles positioned across the street.  (TT1-78-80)

As Saldi waited in the truck, Paul Harvey got out and went into the hotel.  Moments later, Harvey appeared outside the hotel with a woman and a black man who waved at him to get out of the truck and approach them.  When Saldi refused, Harvey and the man and woman started walking towards him.  At this point, Baxter saw that Harvey and a black male

6

walk to Saldi's truck and get inside. The black man, later identified as Mr. Verdiner, got in the front seat and Paul Harvey got in the back. Although he could hear the conversation that occurred in the truck, Baxter could not see what was happening inside the truck. (TT1-116)

As the 3 men sat in Saldi's truck, a green Dodge Dakota driven by Linnie Harvey pulled up from the side and neared Saldi's truck. (TT1-85-86; 52-54) Evidence produced by the Government at trial showed that Linnie Harvey had purchased this truck from Shoubert Beauchamps and that she still owed him money for the deal. (TT1-160-61, 167) In fact, Linnie Harvey testified that Mr. Verdiner and Mr. Beauchamps had told her that they would be in Vermont on the day of the incident to get the money she still owed. (TT1-175-76)

Paul Harvey testified that while sitting in Saldi's truck, he noticed a large package of cocaine sitting on the console between Saldi and Verdiner and that Saldi cut open the package to verify that the substance was in fact cocaine. (TT1-55-56) After Saldi sampled the cocaine, he got out of the front seat of the truck to retrieve a bag of money from the backseat. This was a signal to law enforcement that the transaction had taken place. Task Force Officer Sergeant Matthew Birmingham then gave the order for the arrests teams to move in and arrest the defendants. (TT1-92-93; 56) As the officers moved in, Harvey claims that Verdiner threw the package into the backseat and that he then tried to throw it out the door towards Saldi. (TT1-56; 69)

The package of cocaine was found on the ground in the snow. (TT2-100-103) Baxter

7

identified Government's Exhibit 90 as a photo of the package of cocaine seized that day and testified that the substance field tested positive for cocaine. (TT1-94-95)  Although a partial fingerprint was recovered from the packaging, it did not match Jean Verdiner or Shoubert Beauchamps. (TT1-120-122; TT2-216-217)

During the trial, in addition to the testimony of case agent Todd Baxter, the Government presented the testimony of several task force officers who participated in the arrest of the Defendants, but who offered little in the way of direct testimony regarding Jean Verdiner.  In addition to describing the events which occurred during the arrests of Mr. Verdiner, Saldi and Linnie and Paul Harvey, many of these officers testified exclusively about the arrest of Shoubert Beauchamps.  Mr. Beauchamps was not in either truck during the incident.  However, as the officers moved in, Mr. Beauchamps was seen attempting to flee the scene on foot before being quickly apprehended. (TT2-101, 123-127, 133-137, 148)

In contrast to the testimony about Shoubert Beauchamps, most of the testimony regarding Jean Verdiner was provided by the severely drug addicted Linnie Harvey, her drug addicted brother-in-law Paul Harvey, and large scale drug dealer Ronald Saldi.  Each of these snitches testified for the Government in the hopes of securing lighter sentences for their own criminal conduct.

Like his sister-in-law, Paul Harvey has been a drug addict for more than 30 years. (TT2-37-38) But unlike Linnie, Paul Harvey had been buying his drugs from Saldi for several years. (TT2-39, 61-62) As previously mentioned, Paul Harvey had an outstanding

8

debt of nearly $5000 for cocaine that Saldi had given him, and settling this debt with Saldi was the purpose of Paul Harvey's connection to this case.  When Saldi needed to locate a large scale supplier in order to please Todd Baxter and cut a deal with the Government, Ronald Saldi turned to Paul Harvey.  (TT2-41, 48-49) But Paul Harvey and Ronald Saldi would offer conflicting testimony at trial about what transpired during those conversations as well as what occurred in Saldi's truck the day they were both arrested.

First, Paul Harvey testified only that he noticed a package, which he believed to be cocaine, sitting on the console between Saldi and Verdiner.  (TT2-55) He did not testify as to how it got there.  Harvey also testified that, after the police descended upon the truck that he tried to throw the package of cocaine out of the truck by throwing it towards Saldi.  (TT2-56, 69)  Saldi, on the other hand, testified that a "colored man" pulled the package out of his coat and placed it on the console between the seats.  (TT1-199) Saldi also stated that, when the cops moved in, this man shouted "it's a raid" and threw the package at Saldi hitting him in the chest.  (TT1-201)   However, a taped recording of the incident revealed that no such statement was made.

Second and more troubling, was Saldi's testimony that, during his search for a new source, Paul Harvey had come to his home and told him he could supply him with 10 ounces of cocaine.  Saldi claimed that he told Baxter what Harvey had said but that Baxter instructed him that the quantity was insufficient and thus Saldi did not make this deal.  (TT1-191, 206) In contrast, Paul Harvey denied that this conversation ever took place.  (TT2-61) Moreover,

9

although Baxter did testify that there were other smaller marijuana transactions that Saldi could have arranged, he did not specifically mention that Harvey had offered to sell Saldi 10 ounces of cocaine, an accusation that Paul Harvey himself flatly denied. (TT1-54-55)

This inconsistency becomes more disturbing in light of the recent charges against Saldi. During the trial, Saldi testified that, after his arrest in January 2008, he decided to cooperate with the Government and provided the Government with a sworn statement:

> Q: After your arrest in January of 2008, did you decide to cooperate with the government?
>
> A: Yes.
>
> Q: And what did you do as part of your cooperation? Without naming names. Without stating - - testifying as to the names right now, what - - did your cooperation consist of?
>
> A: Helping the government target individuals?
>
> Q: Well, did you give the names of your suppliers to the police?
>
> A: Yes.
>
> Q: Did you attempt to contact them to make deals?
>
> A. Yes.
>
> Q: Did you in fact make any deals while working for the government with any of the people that had been your suppliers?
>
> A: No.

(TT1-189, lines 4 - 20, 93-94).

Mr. Verdiner asserts that, based upon the information contained in the Complaint against Saldi and the corresponding affidavits, Ronald Saldi perjured himself at trial by claiming that he did not make any drugs deals while working for the Government, and that he may also have committed perjury by testifying that he informed the Government who his suppliers were if, in fact, he omitted the names of the individuals he was dealing with while engaged in the charged conspiracy to protect his coconspirators.

Additionally, the Affidavit states that Saldi is addicted to OxyContin, a powerful opiate, and that he would advance cocaine to his customers in exchange for the pills. (Affidavit in Support of Application for Search Warrant at page 6).  During the trial, however, when asked about drug use, Saldi omitted the fact that he took OxyContin - instead, he stated that he used marijuana, cocaine and mushrooms  (TT1-185-86)  Mr. Verdiner asserts that this "omission" by Saldi was intentional. Because any reference to this drug would have revealed his continued involvement in drug trafficking and would have alerted law enforcement that he had not been entirely truthful during his meetings with them prior to trial, Saldi eliminated the possibility that he would have to reveal his source.

Based on this newly discovered evidence that Ronald Saldi continued to engage in drug dealing while working as a Government Informant, and because he did not testify truthfully at trial, Mr. Verdiner asserts that a new trial is warranted in this case.

## ARGUMENT

The Second Circuit has held, that in order for a motion for new trial based on newly discovered evidence pursuant to Rule 33 to be granted, the defendant must show:(1) that the evidence could not, with due diligence, have been discovered before or during the trial; (2) that the evidence is material; (3) that the evidence is not merely cumulative; and (4) that the admission of the evidence would probably lead to an acquittal. *United States v. Owen*, 500 F.3d 83, 87 (2d Cir. 2007) (citing *United States v. Alessi*, 638 f.2d 466, 479 (2d Cir. 1980)).  Ordinarily, newly discovered evidence which merely impeaches the credibility of a witness is found to be insufficient to warrant a new trial.  See *United States v. Petrillo*, 821 F.2d 85, 89 (2d Cir. 1987); *United States v. White*, 972 F. 2d. 16, 22 (2d Cir. 1992); and *United States v. Gilbert*, 668 F.2d 94, 96 (2d Cir. 1981).

However, as Judge Posner has properly noted, Rule 33 does not preclude retrial in all cases where the newly discovered evidence is merely impeaching, because the Rule itself does not distinguish between categories of evidence:

> The judicial language that seems to exclude impeaching testimony from the scope of Rule 33 thus illustrates the tendency to overgeneralize.  It is easy to confuse a practice with a rule.  The practice has been to deny new trials where the only newly discovered evidence was impeaching.  But the practice should not be taken to imply a rule that even if the defendant proves that his conviction almost certainly rests on a lie, the district judge is helpless to grant a new trial.

*United States v. Taglia*, 922 F.2d 413, 415 (7th Cir. 1991).  Accordingly, in rare cases, newly discovered evidence which is merely impeaching may warrant a new trial. *Id*.

The Second Circuit has recognized this principle and has held that, in certain cases, newly discovered evidence which impacts the credibility of a witness may warrant the granting of a new trial.  See *United States v. Seijo*, 514 F.2d 1357 (2d Cir. 1975) (new trial required where "the reliability of a particular witness may be determinative of innocence or guilt" and there is a reasonable likelihood that the false testimony affected the judgment of the jury); see also *Alvarez v. United States*, 808 F.Supp. 1066, 1092-93 (S.D.N.Y. 1992) (granting motion for new trial in cocaine case where newly discovered evidence consisting of lies and conflicting testimony by a government informant and government agent was material and would probably produce acquittal).

While Mr. Verdiner acknowledges that, ordinarily, newly discovered evidence which merely impeaches the credibility of a government witness is insufficient to justify the granting of a new trial, he contends that this is not an ordinary case.  Mr. Verdiner was not the target of a Drug Task Force investigation nor had the officers ever heard of him prior to the date of the incident.  Nine task force officers testified during the course of the trial and none of them provided any testimony about Mr. Verdiner other than the details of his actual arrest.  Without the testimony of Ronald Saldi that Jean Verdiner had the package of cocaine in his coat and then placed it on the console of Saldi's truck, the evidence produced by the Government established only that Jean Verdiner was present at the time when Paul Harvey completed the drug transaction that he indisputably arranged.

During the trial, Mr. Verdiner's theory of defense was that the drugs in Saldi's truck

had been placed there by someone other than Mr. Verdiner. The testimony of Linnie Harvey and Paul Harvey proved that they were consuming large amounts of cocaine the night before the incident, and Linnie Harvey testified that she gave Paul Harvey cocaine to take with him when he left the hotel that night. Their testimony established that both Harveys were in possession of large amounts of cocaine at a time when Mr. Verdiner and Mr. Beauchamps were not even in the state. Their testimony was consistent with the statements that Paul Harvey had made to Saldi the day before the incident in which he stated that the cocaine was already in Vermont and that he had personally seen it. (TT1-214-215)

Also, Paul Harvey testified that he simply noticed the package of cocaine on the console, and Baxter testified that he could not see what was occurring inside Saldi's truck. Thus, the only evidence that Mr. Verdiner had possession of the cocaine, then removed it from his coat and placed it on the console, came from Ronald Saldi. Accordingly, the jury had to believe the testimony of Saldi in order to convict Jean Verdiner.

Additionally, not only does this newly discovered evidence impeach the credibility of a critical Government witness, it also suggests that the witness committed perjury at trial. In *United States v. Wallach*, 935 F.2d 445 (2d Cir. 1991), the Second Circuit held that perjury of a key government witness infected the trial proceedings and required reversal of the defendants convictions for racketeering and other offenses. *Id*. at 473. In reaching this conclusion the Court noted that "[w]here newly discovered evidence demonstrates that a principal government witness committed perjury, we must determine 'whether the jury

14

Case 2:08-cr-00023-wks   Document 157   Filed 08/11/09   Page 15 of 18

probably would have altered its verdict" had it known of the witness' false testimony. *Wallach*, 935 F.2d at 458 (quoting *United States v. Stofsky*, 527 F.2d 237, 246 (2d Cir.1975)). As stated in *Stofsky*, "once it is shown that a material witness has intentionally lied with respect to any matter, it is difficult to deny that the jury, had it known of the lie, 'might' have acquitted." *Stofsky*, 527 F.2d 246. As such, the Court concluded:

> Since the witness's credibility could very well have been a factor of central importance to the jury, indeed every bit as important as the factual elements of the crime itself . . . Upon discovery of previous trial perjury by a government witness, the court should decide whether the jury probably would have altered its verdict if it had the opportunity to appraise the impact of the newly discovered evidence not only upon the factual elements of the government's case but also upon the credibility of the government's witness.

*Id*. See also *United States v. Seijo*, 514 F.2d 1357 (2d Cir. 1975) (reversing conviction and granting new trial where credibility of government witness was decisive factor in case and could have affected the result).

In this case, law enforcement officers arranged the controlled purchase of a kilo of cocaine by Ronald Saldi from Paul Harvey. They had not heard of Jean Verdiner and certainly did not expect him to be present when this transaction took place. Therefore, law enforcement presented no testimony at trial which would have established, beyond a reasonable doubt, that Mr. Verdiner was guilty of the charged offense. The Government needed the testimony of Linnie Harvey, Paul Harvey and Ronald Saldi to accomplish that.

In evaluating the significance of Saldi's testimony in the conviction of Jean Verdiner

the Court should consider the fact that the jury returned inconsistent verdicts in this case. While the Government charged that Mr. Verdiner and Mr. Beauchamps aided and abetted each other in distributing cocaine, the jury found that the Government had failed to prove that Mr. Beauchamps was involved. The jury reached this conclusion even after hearing the testimony of Linnie Harvey that she had several previous drug related interactions with both Mr. Verdiner and Mr. Beauchamps and that they often were together. Clearly the jury did not credit her testimony.

Additionally, although Paul Harvey testified regarding some prior drug purchase involving Linnie and Mr. Verdiner, he did not testify that he had a phone conversation with Verdiner about purchasing a kilo of cocaine, as Linnie Harvey had claimed. He testified that Linnie informed him that she had found a source and it was Linnie who told Paul Harvey when she was ready for the transaction to take place. (T2-47-48, 52) Therefore, the jury had to believe the testimony of Ronald Saldi that Jean Verdiner took the package of cocaine out of his coat and placed it on the console. Without that testimony, it is just as likely that Paul Harvey placed the drugs there himself.

Had the jury known that Ronald Saldi had violated his bond, violated his cooperation agreement, lied to the case agent and continued to buy and sell drugs while working for the Government, this information undeniably would have impacted its credibility determination with respect to Saldi. Furthermore, had he been truthful about his use of OxyContin and his addiction to the drug the jury may have rejected his testimony entirely as it appears it did with

respect to the Harveys. Because the Government's case depended upon the testimony of Ronald Saldi, this newly discovered evidence of continued criminal activity involving the sale of drugs, including cocaine, would have affected the jury's verdict. Accordingly, Mr. Verdiner's Motion for New Trial is due to be granted.

## Conclusion

Jean Verdiner was convicted by a jury based in large part upon the testimony of a witness whose credibility has now been severely undermined by facts which became known to Mr. Verdiner only following his trial. Not only does this new evidence seriously impugn the credibility of the only witness who claimed to have seen Mr. Verdiner take the package from inside his coat, but it also suggests that Ronald Saldi committed perjury during the trial. Accordingly, in order to ensure Mr. Verdiner's rights to due process and a fair trial, this Court should vacate his conviction and grant his Motion for New Trial.

Dated at Burlington, Vermont this 11th day of August, 2009.

JEAN P. VERDINER

By:   /s/ *Elizabeth D. Mann*
Elizabeth D. Mann
Assistant Federal Public Defender
MICHAEL L. DESAUTELS
Federal Public Defender
126 College Street, Suite 410
Burlington, VT 05401

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CASE NO. 2:08-cr-23-04 |
| | ) | |
| JEAN VERDINER, | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of August, 2009, I electronically filed the Defendant's *Motion for New Trial Based on Newly Discovered Evidence* with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following: James Gelber, Assistant United States Attorney, United States Attorneys Office via James.Gelber@usdoj.gov.

By:  /s/ *Elizabeth D. Mann*
Elizabeth D. Mann
Assistant Federal Public Defender
MICHAEL L. DESAUTELS
Federal Public Defender
126 College Street, Suite 410
Burlington, VT 05401